UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| J.S., a Minor, By and Through His Next Friend and Father, JACKIE STEELE,<br><br>    Plaintiff,<br><br>V.<br><br>LAUREL COUNTY BOARD OF EDUCATION, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 6:18-cv-00258-KKC<br><br><u>ORDER AND OPINION</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment. [DE 11; 12.] The Court having been sufficiently advised on the matter, it is HEREBY ORDERED that Plaintiff's motion for summary judgment [DE 11] is **Granted** and Defendants' motion for summary judgment [DE 12] is **Denied**.

## BACKGROUND

Plaintiff J.S. is a 6th grade boy at South Laurel Middle School ("SLMS"). As stipulated by the parties, J.S. tried out for and won a spot on the 6th grade boys' basketball team. [DE 1, at 2.] When it comes to athletics, SLMS is subject certain rules and regulations promulgated by the Laurel County Board of Education ("LCBE"). These rules are codified annually in the Laurel County Public Schools Athletic Handbook. [DE 1, at 6.] The 2018-2019 edition includes a rule referred to colloquially as the "Play Up, Stay Up" Rule. The language of the Rule is as follows:

> A Student can only play at one grade level while participating in athletics at the middle school level. If a coach chooses to allow a student to play at a higher level, the student must remain at that level. This rule does apply to baseball and softball in regards to junior varsity and varsity play at the middle school.

1

> "If they play up, they stay up". This rule does not apply to the sports of soccer, volleyball and girls basketball due to play being in different seasons.

[DE 1-2.] Defendants assert that in September of 2018, the LCBE amended the Rule to include the following language:

> A Student can only play at one grade level while participating in athletics at the middle school level. If a coach chooses to allow a student to play at a higher level, the student must remain at that level. This rule does apply to baseball and softball in regards to junior varsity and varsity play at the middle school. "If they play up, they stay up". **This rule may be suspended by the Superintendent at the recommendation of the District Athletic Director based upon low participation numbers on a team to facilitate accommodations for student participation**. This rule does not apply to the sports of soccer, volleyball and girls basketball due to play being in different seasons.

[DE 12, at 2.] This September amendment appears to have come as a direct result of J.S.'s challenge to the Play Up, Stay Up Rule.

Pursuant to the Play Up, Stay Up Rule, J.S. is precluded from playing basketball at multiple grade levels. For example, if J.S. were to secure a spot on either of the high school teams (junior varsity or varsity), he would be unable to play back down for any of the SLMS basketball teams. The Rule also restricts his movement between the middle school grade levels. Thus, if J.S. were able to secure a spot on the 7th grade team, he would be unable to play down at the 6th grade level. And if he obtained a spot on the 8th grade team, J.S. would be unable to compete at both the 6th and 7th grade levels.

Female basketball players at SLMS and North Laurel Middle School ("NLMS") are exempt from the Play Up, Stay Up Rule. [DE 12, at 7.] In its current form, the Rule states that the exemption for girls' basketball is "due to play being in different seasons." [DE 1-2.] This suggests that girls' middle school basketball players are free to play at the high school level and return down to play for a middle school team. The record indicates, however, that the girls playing basketball at SLMS and NLMS were granted not only the ability to play up

and down between the high school and middle school levels, but also the ability to play for multiple middle school teams. [DE 12, at 7.]

On August 16, 2018, Bill Meader, Counsel for J.S., wrote a letter to Douglas Bennett, the Superintendent of the Laurel County School System, complaining that the girls on NLMS's 7th grade team were playing up at the 8th grade level and then returning down to compete at the 7th grade level. Meader also asserted that the Rule improperly discriminated against the male athletes of SLMS and NLMS and threatened to sue if Play Up, Stay Up was not abolished or at a minimum, applied even-handedly. [DE 1-3, at 4.]

On August 30, 2018, Counsel for the Defendants, Larry Bryson, responded that the reason the Rule was suspended for the NLMS girls' basketball team was because there were not enough players to field an 8th grade team. Bryson specifically pointed to the fact that in there were only a handful of 8th grade girls who participated in the 2018 tryouts. [DE 1-4, at 3.] On September 6, 2018, Meader and Jackie Steele (J.S.'s father) sent letters to Bryson. Both letters clarified J.S.'s position that the Play Up, Stay Up rule violated both the Equal Protection Clause of the Fourteenth Amendment and certain provisions of Title IX.

When the LCBE refused to change its Play Up Stay Up Rule, J.S., by and through his father Jackie Steele, filed this action in federal court. The Complaint, filed on October 10, 2018, alleges violations of the Equal Protection Clause of the Fourteenth Amendment, Title IX, Sections 1, 2, and 3 of the Kentucky Constitution, and KRS Chapter 344. [DE 1, at 3.] J.S. seeks injunctive relief, nominal damages of $1, and attorney's fees. On October 19, 2018 the parties participated in a teleconference with the Court. [DE 9.] During the teleconference, the parties agreed to forego discovery, indicating that the issues before the Court were legal in nature. The parties have now submitted their cross-motions for summary judgment [DE 11; 12.]

## ANALYSIS

The sole issue before the Court is whether the LCBE's Play Up, Stay Up Rule improperly discriminates against boys playing basketball at SLMS and NLMS. The Fourteenth Amendment's Equal Protection Clause protects individuals against intentional discrimination by state actors[1]. As noted by the Supreme Court, gender is a "quasi-suspect class," triggering intermediate scrutiny. *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 322 (6th Cir. 1998). Intermediate scrutiny, in turn, requires a showing that the classification is substantially related to an important government interest. *Equal. Found. of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 293 (6th Cir. 1997). Moreover, the justification for a gender-based classification must be "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

Kentucky's Equal Protection guarantee is tantamount to that of the Fourteenth Amendment. *Holder v. Robbins*, No. CIV.A. 05-328-JBC, 2006 WL 751238, at *7 (E.D. Ky. Mar. 21, 2006) (citing *Roberts v. Mooneyhan*, 902 S.W.2d 842, 843 (Ky.Ct. App. 1995)). Accordingly, the Court will treat J.S.'s Equal Protection claims under the Fourteenth Amendment and Kentucky Constitution as one. *See D.F. v. Codell*, 127 S.W.3d 571, 575 (Ky. 2003).

The Play Up, Stay Up Rule, as it currently stands, hamstrings the ability of the boys at SLMS and NLMS to play basketball at multiple grade levels. Due to an exemption, however, the girls playing basketball at SLMS and NLMS can play up and down without restriction. This enumerated safe harbor unquestionably creates a facial gender classification. The issue then becomes whether the girls' exemption from the Play Up, Stay Up Rule is substantially related to an important interest and whether LCBE's proffered

---

[1] It is well established that school boards qualify as state actors for Fourteenth Amendment purposes.

4

justification for the exception is "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

In their cross-motion for summary judgment, Defendants present five justifications for LCBE's Play Up, Stay Up Rule. [DE 12, at 3.] First, Defendants contend that the Rule allows middle school athletes to develop their skills. Second, Defendants argue that the Rule promotes maximum participation by student athletes. Third, Defendants maintain that the Rule—through its exemptions—assists Laurel County with its Title IX compliance. Fourth and Fifth, Defendants suggest that the Rule helps prevent injury and brings about better academic performance. [DE 12, at 3.]

Of the Defendants' proffered explanations, only one addresses the question of why the SLMS and NLMS girls' basketball teams are exempted from the Play Up, Stay Up Rule—compliance with Title IX. The other four merely speak to the general aims of the Play Up, Stay Up Rule. An important distinction needs to be drawn here. The legitimacy of the Play Up, Stay Up concept is not before the Court today. Rather, it is the exemption for girls that provides the basis for J.S.'s Equal Protection claim.

Defendants argue that an exemption from Play Up, Stay Up is necessary for the girls' basketball teams at SLMS and NLMS because without it, there would not be enough athletes to field certain teams. Defendants specifically point to this year's NLMS 8th grade girls' basketball team. [DE 12, at 7.] The record reveals that only three girls came out for the team. Thus, in order to provide these girls with the opportunity to play, the 8th grade team was supplemented with 7th graders. The 7th graders who played up were then permitted to return and compete at the 7th grade level. [DE 12, at 7.] Defendants claim that if they fail to provide these types of opportunities to athletes, they run the risk of falling out of compliance with Title IX.

5

Without question, compliance with Title IX constitutes an important government interest. *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 104 (4th Cir. 2011) (stating that "every appellate court that has considered the constitutionality of the proportionality prong of the Three–Part Test has held that it does not offend constitutional principles of equal protection"); *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 614 (6th Cir. 2002) ("In the case before us today, it is evident that Miami took the challenged actions in an attempt to comply with the requirements of Title IX."); *Kelley v. Bd. of Trustees*, 35 F.3d 265, 272 (7th Cir. 1994) ("There is no doubt []that removing the legacy of sexual discrimination—including discrimination in the provision of extra-curricular offerings such as athletics—from our nation's educational institutions is an important governmental objective."). Accordingly, the Court must determine whether the LCBE's methods of achieving this interest pass constitutional muster. *See Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982). Here, intermediate scrutiny requires that the Rule's enumerated exemptions must be substantially related to the interest of achieving compliance with Title IX. The purpose of requiring such a close means-ends relationship is to assure that the validity of a classification is determined through a "reasoned analysis." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725–26 (1982). After a thorough review, the Court finds that the Defendants have not met their burden under intermediate scrutiny. While the Court recognizes the legitimacy of the Defendants' proffered governmental interest—compliance with Title IX—it finds that the methods employed to achieve that interest fall short of constitutional muster.

As written, the Play Up, Stay Up Rule facially exempts girls' middle school basketball, along with other sports, from its competition restrictions. The Rule justifies this exemption "due to play being in different seasons." This justification, however, is unrelated to the proffered interest of compliance with Title IX. The record reflects that SLMS currently has

6

more than enough female participants to field basketball teams at the 6th, 7th, and 8th grade levels. [DE 12, at 6.] Nevertheless, because of Rule's blanket exemption, the girls playing basketball at SLMS enjoy the ability to compete at multiple grade levels. Since there are no articulated Title IX concerns regarding the SLMS girls' basketball teams, the Play Up, Stay Up Rule should apply equally to them. For the reason that the Play Up, Stay Up Rule is disproportionate to the stated interest of Title IX compliance, it is not substantially related to that interest. *See Neinast*, 346 F.3d at 595. As such, the Defendants have failed to satisfy their burden.

Whether the Play Up, Stay Up Rule is a good one is not before the Court. The LCBE Rule at issue draws ire not because athletes are prevented from playing at multiple grade levels, but instead because the Rule facially discriminates on account of gender without satisfying intermediate scrutiny. The Court recognizes compliance with Title IX as an important government interest, but the exemptions enumerated in the Rule are far too expansive. Deviations from the Play Up, Stay Up Rule must be driven by a desire to achieve an articulable and supportable important government interest, such as compliance with Title IX.

## **CONCLUSION**

The Court HEREBY ORDERS the following:

(1) Plaintiff's cross-motion for summary judgment [DE 11] is **GRANTED**.
(2) Defendants' cross-motion for summary judgment [DE 12] is **DENIED**.
(3) Defendants' request for a preliminary injunction is **GRANTED**. The LCBE shall either abolish the Play Up, Stay Up Rule or revise any exemption to the Rule in a manner that: (1) does not facially discriminate on account of gender; or (2) is

substantially related to any articulable important government interest, such as compliance with Title IX.

Dated November 9, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY